## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| North American Science Associates, LLC, *an Ohio limited liability company, also known as NAMSA*; and NAMSA Holdco, LLC, *a Delaware limited liability company*, | Civ. No. 24-287 (JWB/ECW) |
| Plaintiffs, | |
| v. | **CONSENT JUDGMENT** |
| Michael Conforti; Pamela Conforti; and Phoenix Preclinical Labs, LLC, *a Minnesota limited liability company*, | |
| Defendants. | |

---

Alexandra B. Van Doren, Esq., Caitlin Dahl, Esq., Emma Burnett, Esq., Gabriel S. Gross, Esq., Katherine A. Rouse, Esq., Maurice Baynard, Esq., Rachel S. Horn, Esq., Russell Drach Mangas, Esq., and Shannon D. Lankenau, Esq., Latham and Watkins LLP; and Diego E. Garcia, Esq., Michael F. Cockson, Esq., Nathan A. Brennaman, Esq., and Nathaniel J. Zylstra, Esq., Faegre Drinker Biddle & Reath LLP, counsel for Plaintiffs.

Cassandra B. Merrick, Esq., Christopher W. Madel, Esq., and Ellen Wickham, Madel PA, counsel for Defendant Michael Conforti.

Edward B. Magarian, Esq., and Ian Andrew Blodger, Esq., Dorsey & Whitney LLP, counsel for Defendants/Counter Claimants Pamela Conforti and Phoenix Preclinical Labs, LLC.

---

Without trial or adjudication of any issues of fact or law, and upon the consent of the Parties, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as follows:

### PARTIES

1. Plaintiff North American Science Associates, LLC is an Ohio limited

liability company with a principal place of business and global headquarters in Ohio.

2.     Plaintiff NAMSA Holdco, LLC is a Delaware limited liability company with a principal place of business in Ohio (collectively North American Science Associates, LLC and NAMSA Holdco, LLC are referred to as "Plaintiff" or "NAMSA").

3.     Defendant Pamela Conforti ("Ms. Conforti") is an individual that is a citizen and resident of the State of Minnesota.

4.     Defendant Michael Conforti ("Dr. Conforti") is an individual that is a citizen and resident of the State of Minnesota.

5.     Defendant Phoenix Preclinical Labs, LLC ("Phoenix Preclinical") is a Minnesota limited liability company with a principal place of business and headquarters in Minnesota.

## JURISDICTION

6.     The Court has jurisdiction over this dispute under 28 U.S.C. § 1331 because NAMSA has asserted claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

7.     The Court has jurisdiction over this dispute under 28 U.S.C. § 1332 because the citizenship of all Plaintiffs is diverse from the citizenship of all Defendants and the amount in controversy exceeds $75,000.

8.     The Court has supplemental jurisdiction over NAMSA's state law claims under 28 U.S.C. § 1367(a) because they are so related to NAMSA's claims under federal law that they form part of the same controversy and derive from a common nucleus of operative facts.

9. The Court has personal jurisdiction over all Defendants because they are each a citizen of the state of Minnesota.

## BACKGROUND

10. On February 2, 2024, NAMSA initiated a lawsuit against Defendants in the United States District Court for the District of Minnesota asserting claims under the Defend Trade Secrets Act, common law breach of contract, and commercial defamation (*see* Complaint, Dkt. 1).

11. NAMSA filed an amended complaint on March 13, 2024, to include claims originally brought by NAMSA Holdco, LLC against Dr. Conforti in an action that was filed in the United States District Court for the District of Delaware, No. 1:24-cv-00139, which has since been transferred to the United States District Court for the District of Minnesota and consolidated into the above-captioned action.

12. On April 3, 2024, Defendants answered the Complaint, and Ms. Conforti and Phoenix Preclinical asserted counterclaims for defamation and unfair competition, respectively.

13. Ms. Conforti filed amended counterclaims against NAMSA on April 24, 2024 for defamation and breach of contract, and Phoenix Preclinical filed an amended counterclaim for unfair competition.

14. On April 27, 2024, after expedited discovery, NAMSA filed an Amended Motion for Preliminary Injunction. (Dkt. 160.) Dr. Conforti, Phoenix Preclinical, and Ms. Conforti filed responses opposing that Motion. (Dkt. 232, 249.) The Court heard oral argument on July 25, 2024, and that Motion is pending.

15. On May 29, 2024, NAMSA moved to dismiss Ms. Conforti and Phoenix Preclinical's counterclaims. (Dkt. 153.) Ms. Conforti and Phoenix Preclinical filed responses opposing that Motion. (Dkt. 318.) Briefing is complete, and that Motion is also pending.

16. Defendants deny engaging in any wrongdoing, including but not limited to misappropriating NAMSA trade secrets to use in support of Phoenix Preclinical, breaching their contracts with NAMSA, and defaming NAMSA.

17. NAMSA denies engaging in any wrongdoing, including but not limited to defaming Ms. Conforti, breaching its separation agreement with her, and engaging in unfair competition.

## CONSENT JUDGMENT

18. To resolve the case, the Parties have agreed to enter the following Consent Judgment.

19. **Consent Judgment.** This Consent Judgment shall be entered by the Court.

20. **Process for Identifying NAMSA Information.** Within twenty-one (21) days of the entry of this Consent Judgment, Defendants shall provide to NAMSA a list of information, documents, files, or data that Defendants believe to be NAMSA Information (as that term is defined in Paragraph 21). Within ten (10) days of receiving this list, NAMSA shall respond in writing with any proposed modifications to the list. If NAMSA does not respond within this period, the list shall be presumptively complete.

If a dispute arises over whether a document constitutes NAMSA Information, the Parties must meet and confer within five (5) business days of NAMSA's response. If the

issue remains unresolved, within seven (7) business days after the meet-and-confer, either Party may file a motion for the Magistrate Judge to resolve the dispute. Failure to timely file a motion shall waive any further challenge to the completeness of the list, unless good cause is shown for the untimely motion.

21. **Return of NAMSA Information.** To the extent Defendants have not done so, within fourteen (14) days of the date of the identification of NAMSA Information under Paragraph 20, Defendants shall deliver to NAMSA all Proprietary Information (as that term is defined in the Confidentiality Agreements dated February 15, 2021, and attached as Exhibits A and B to the Amended Complaint filed by NAMSA in this action) (*see* Dkts. 99-1, 99-2) and any other non-public information, documents, records, files, or data in any Defendant's possession, custody, or control copied or taken from Plaintiff or its affiliates or from any of Plaintiff's or its affiliates' computers, servers, databases, networks, or systems, including without limitation any and all information, documents, files, or data allegedly copied or downloaded by Dr. or Ms. Conforti from Plaintiff's or its affiliates' computers, servers, databases, or systems (together with Proprietary Information, "NAMSA Information"), regardless of the medium on which such materials were copied, transferred, or stored, and regardless of whether Defendants obtained the materials directly, through a third party, or from NAMSA.

For avoidance of doubt, this provision encompasses NAMSA Information within any Defendant's possession, custody, or control through a third party that has come to possess such information, including but not limited to Phoenix Investments, LLC; Conforti Holdings, LLC; and FlexSchema Software, LLC ("FlexSchema").

The definition of NAMSA Information shall not refer to any documents, emails, records, files, or data that (a) are personal to Dr. or Ms. Conforti and unrelated to NAMSA's business; (b) were provided by NAMSA to Conforti Holdings, LLC related to NAMSA's occupancy of Conforti Holdings, LLC's buildings; or (c) were provided by NAMSA to FlexSchema from March 1, 2021 until approximately September 1, 2022 relating to services FlexSchema provided to NAMSA.

To be clear, NAMSA Information also shall not include (a) any documents, files, records, or information that are publicly available or otherwise exist in the public domain through no fault of Defendants; or (b) any documents, emails, records, or files retained pursuant to legal or regulatory obligations, including but not limited to tax, employment, or financial records, that Defendants are required to keep under federal or state law.

22. **Deletion of NAMSA Information.** Within twenty-one (21) days of the delivery of all NAMSA Information by Defendants pursuant to Paragraph 21 of this Order, an independent third-party computer forensics firm selected and engaged by Defendants, which can be Computer Forensic Services (the "Independent Computer Forensics Firm"), will certify in writing to NAMSA that it has caused all NAMSA Information identified by Defendants to be permanently deleted from any and all Devices and Accounts operated, maintained, accessed, or otherwise used by Defendants (and any individual or entity acting in concert with them), using industry-standard practices for such forensic analysis and deletion, and shall provide as part of the certification a listing, for all Devices and Accounts, of all such files that have been identified and deleted. The certification must also confirm that only NAMSA Information, as defined in Paragraph

21, has been deleted. For purposes of this Order, "Devices and Accounts" shall mean hard drives, computers, laptops, phones, USB devices, external data storage devices, other electronic devices, or personal or business email or cloud accounts in the possession, custody, or control of Defendants.

23. **NAMSA's Deletion Verification Option.** NAMSA, at its expense, may engage its own independent third-party computer forensics firm to engage in reasonable efforts to verify Defendants' deletions of NAMSA Information, and Defendants shall cooperate and provide NAMSA's third-party firm with information in response to all reasonable requests needed to verify such deletions. This work shall begin and end no later than thirty (30) days after NAMSA's receipt of the Independent Computer Forensic Firm's certification referenced in Paragraph 22 of this Agreement.

Any disputes over NAMSA's verification process shall be promptly brought before the Magistrate Judge, and no nonconsensual additional forensic analysis may be conducted without the approval of the Magistrate Judge.

24. **Cease and Desist Order.** As of the date this Consent Judgment is entered, absent further agreement of the Parties or order of this Court, Defendants (individually and collectively), and any person acting in concert with any of them, shall cease and refrain or continue to refrain from directly or indirectly using, accessing, disclosing, or copying, for any purpose, any NAMSA Information, regardless of the medium on which such materials were copied, transferred, or stored.

25. **Inadvertently Retained NAMSA Information.** In the event that Defendants identify any additional NAMSA Information within their possession,

7

custody, or control after their reasonable, good faith attempts to comply with Paragraphs 20–22 ("Inadvertently Retained NAMSA Information"), Defendants shall comply with the following provisions:

    i.    Defendants shall immediately cease accessing the Inadvertently Retained NAMSA Information and shall ensure that it is preserved; and

    ii.    Within three (3) business days of becoming aware of any Inadvertently Retained NAMSA Information, Defendants shall notify counsel for NAMSA of the existence of the Inadvertently Retained NAMSA Information, shall deliver such information to counsel for NAMSA, and shall then direct that the Inadvertently Retained NAMSA Information be permanently deleted from any and all Devices and Accounts by the Independent Computer Forensics Firm, which shall provide NAMSA a supplemental certification and file listing in the manner contemplated by Paragraph 22, at Defendants' expense.

26.    **<u>Compliance with Consent Judgment.</u>** If Defendants comply with the procedures detailed in Paragraph 23, Defendants shall not be held to have violated this Order for inadvertently retaining NAMSA Information, as long as Defendants have made reasonable, good faith efforts to attempt to comply with Paragraphs 20–22. Nothing in this Order, including the procedures for dealing with any Inadvertently Retained NAMSA Information contemplated by Paragraph 25, excuses or absolves Defendants from timely complying with Paragraphs 20–22. NAMSA has not waived its right to seek enforcement of this Consent Judgment for any alleged violations of this Order, including Paragraphs 20–22, or to argue that Defendants have failed to substantially comply with those

provisions.

27. **Retention of Certain Documents.** NAMSA agrees that Dorsey & Whitney LLP ("Dorsey") may take custody of and maintain the following records until January 1, 2030:

    i. Records related to the historical financial performance of American Preclinical Services, LLC ("APS"), including QuickBooks files that provide the basis for APS's financial statements ("APS Financials"); and

    ii. Records related to APS's Paycheck Protection Program Loan application and the related forgiveness of the Paycheck Protection Program Loan granted to APS ("PPP Records").

Dorsey shall thereafter destroy the above records.

28. **NAMSA's Obligation to Provide Certain Documents Upon Request.** Upon written request to Dorsey by Ms. Conforti or Dr. Conforti, NAMSA shall authorize Dorsey to provide to the appropriate person or entity (whether a government or private financial institution, or Ms. Conforti or Dr. Conforti's attorneys, financial advisors, tax professionals, or other similar persons) records relating to APS Financials, PPP Records, and/or any other records or information to the extent it relates to any response by Ms. Conforti, Dr. Conforti, or one of their businesses to any audit or financial arrangement conducted by a government or private financial institution.

29. **Compliance with Protective Order.** Nothing in this Order shall prohibit the Parties' counsel from retaining one copy of the non-public version of all filings, deposition transcripts, and exhibits in this action or maintaining a copy of any NAMSA

9

Information submitted to the Court, as permitted by Paragraph 8(b) of the Protective Order (Dkt. 111). However, Defendants shall not have access to any such non-publicly filed information.

30. **Prohibited Competitive Activity by Dr. Conforti.** Defendant Dr. Conforti shall continue to be bound by his Confidentiality Agreement, dated February 15, 2021, and attached as Exhibit B to the Amended Complaint filed by NAMSA in this action (*see* Dkt. 99-2), and shall refrain from engaging in Competing Activities, as that term is defined in his Restrictive Covenant Agreement, dated February 15, 2021, and attached as Exhibit C to the Amended Complaint filed by NAMSA in this action (*see* Dkt. 98), which include but are not limited to engaging in, preparing to engage in, or assisting any individual or entity to engage in preclinical contract research, preclinical contract testing services or regulatory consulting or advisory services for the medical device or pharmaceutical industries until March 10, 2030. As noted in Dr. Conforti's Confidentiality Agreement and Restrictive Covenant Agreement, Dr. Conforti's work with FlexSchema of providing data and/or software management services is not a "competitive activity."

31. **Competitive Activity by Ms. Conforti.** Defendant Ms. Conforti may engage in Competing Activity, as that term is defined in her Confidentiality Agreement, dated February 15, 2021, and attached as Exhibit A to the Amended Complaint filed by NAMSA in this action (Dkt. 99-1).

32. **Non-Disparagement Order.** The Parties shall not defame one another in relation to any of the facts alleged by any Party to this action.

33. **Parties to Bear Own Costs.** The Parties shall bear their own fees and costs for this action.

34. **Final Judgment and Appeal Waiver.** This Consent Judgment constitutes the final judgment in this matter and the Parties waive the right to appeal this Consent Judgment. This waiver does not apply to future disputes over the enforcement or interpretation of this Consent Judgment, nor does it prohibit any Party from seeking relief from this Court based on subsequent material changes in circumstances that may affect compliance with or warrant modifying this Order.

35. **No Violations.** As of the date this Consent Judgment is entered, no Party, and any person acting in concert with any of them, shall directly or indirectly violate the terms of this Consent Judgment.

36. **Continuing Jurisdiction for Enforcement.** The Court shall retain jurisdiction over this action for purposes of implementing and enforcing this Consent Judgment and entering any additional orders necessary and appropriate to the public interest. This Consent Judgment is enforceable by a motion for contempt and violations of this Consent Judgment may include contempt sanctions, damages, injunctive relief, attorneys' fees, costs, and any other relief deemed proper.

37. Pursuant to this Consent Judgment, this matter is **DISMISSED WITH PREJUDICE** in its entirety.

Date: March 14, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge